No.   94-341

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

BRUCE EUGENE BUTLER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        David E. Stenerson, Attorney at Law, Hamilton,
        Montana

        For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        Micheal Wellenstein, Ass't Attorney General,
        Helena, Montana

        Robert L. Deschamps, Missoula County Attorney,
        Missoula, Montana
        Fred VanValkenburg, Deputy County Att'y, Missoula
        Montana

FILED

AUG 04 1995

Filed: Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: March 30, 1995

Decided: August 4, 1995

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

On August 18, 1992, the State charged defendant Bruce Eugene Butler (Butler) by information in the Fourth Judicial District Court, Missoula County, with one count of sexual assault, a felony. Butler initially pleaded not guilty to the charge but subsequently entered an Alford plea. Upon the State's recommendation, the District Court suspended Butler's sentence subject to court-ordered conditions. Alleging numerous violations of the conditions, the State filed a petition to revoke Butler's suspended sentence. Following the State's second petition to revoke Butler's suspended sentence, the District Court revoked the suspended sentence and ordered Butler committed to the Montana State Prison for ten years. Butler appeals the District Court's revocation of his suspended sentence. tie affirm.

Butler raises the following issue on appeal:

Did the District Court violate Butler's Fifth Amendment right against self-incrimination by revoking Butler's suspended sentence?

BACKGROUND FACTS

On August 18, 1992, the State charged Butler with one count of sexual assault, a felony. At the hearing on Butler's motion to dismiss counsel, the District Court explained to Butler the option and consequences of entering an Alford plea under § 46-12-212(2), MCA. Four days later, Butler entered an Alford plea to the charge of sexual assault, stating that it was in his best interest to enter the plea and that there was a factual basis for the charge.

2

Pursuant to the plea bargain agreement, Butler waived the pre-sentence investigation. The District Court sentenced Butler to ten years in the Montana State Prison, but suspended Butler's sentence subject to the following thirteen conditions:

1. supervision of probation and parole;

2. mental health counseling and/or alcohol and drug counseling as directed by Butler's probation officer;

3. no consumption of alcohol or entering bars;

4. submit to a test of bodily fluids for alcohol or drugs;

5. at Butler's own expense, undergo a sex offender evaluation by a professional person designated by the probation officer and enter and complete a sexual offender treatment program recommended by the probation officer;

6. pay restitution to the victim for the cost of her counseling;

7. submit to a search of his person, vehicle, or residence at the request of his probation officer;

8. no contact with the victim or her family;

9. reimburse Missoula County for the cost of his public defender;

10. pay $100 for the cost of the prosecution;

11. pay a surcharge of $20;

12. serve 120 days in the Missoula County Jail with credit for time already served; and

**13.** obey all laws.

The District Court also ordered Butler to immediately sign up for probation, to obtain a travel permit when leaving the state, and upon arrival at his destination, to have a law enforcement agency confirm Butler's location to the probation officer.

On March 19, 1993, the State filed a petition to revoke Butler's suspended sentence, alleging that Butler had been entering bars, drinking, and had not undergone a sexual offender evaluation or treatment program. Butler did not appear at the revocation hearing and the District Court subsequently issued a bench warrant for his arrest. On July 26, 1993, Butler appeared in court and denied the State's allegations. On August 30, 1993, Butler withdrew his denials and admitted all of the allegations. The District Court continued Butler's probation, ordered Butler to follow all of the original conditions, and required Butler to enter a sexual offender program within 60 days.

On December 7, 1993, the State filed a second petition to revoke Butler's suspended sentence. The State alleged that Butler 1) changed his place of residence without first obtaining permission; 2) left his assigned district without first obtaining written permission from his probation officer; 3) did not maintain employment; 4) did not personally report to his probation officer; 5) did not undergo a sexual offender evaluation; 6) did not complete a sexual offender treatment program; 7) had not reimbursed Missoula County for the cost of his public defender; 8) had not paid the $20 surcharge; and 9) had not paid $100 for the cost of

4

his prosecution.

Butler denied the allegations but later admitted them with explanations. The State recommended continued probation; however, the probation officer recommended incarceration. Based on Butler's admissions, the District Court found that Butler violated his probation and therefore revoked his suspended sentence and ordered Butler committed to the Department of Corrections for ten years without eligibility for parole until Butler completes the sexual offender program. Butler appeals the revocation of his suspended sentence.

## DISCUSSION

Did the District Court violate Butler's Fifth Amendment right against self-incriminationby revoking Butler's suspended sentence?

Butler alleges that the District Court revoked his suspended sentence primarily because he would not admit guilt in order to either undergo a sexual offender evaluation or enter a sexual offender treatment program. Thus, Butler claims that the District Court violated his Fifth Amendment right against self-incrimination when it revoked his suspended sentence.

The standard for revocation of a suspended sentence only requires that the judge be reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty. State v. Lundquist (1992), 251 Mont. 329, 331, 825 P.2d 204, 206 (citing State v. Robinson (1980), 190 Mont. 145, 148-49, 619 P.2d 813, 815). We review a district court's decision to revoke a suspended sentence to determine if the district court

abused its discretion.  <u>Lundquist,</u> **825** P.2d at 206.

The State argues that this Court should not review Butler's claim that the District Court violated Butler's Fifth Amendment right against self-incrimination because Butler did not raise his Fifth Amendment claim in the District Court.  The State bases its claim on § 46-20-104(2), MCA, which covers the scope of appeal by a defendant and provides in part:

> Upon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment.  Failure to make a **timely** objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2).

In State v. Arlington (1994), 265 Mont. 127, **151, 875** P.2d 307, **321,** we construed § 46-20-104(2), MCA, to bar a defendant from raising an issue on appeal if that defendant did not raise the issue before the district court.

Although Butler did not specifically state that his Fifth Amendment right against self-incrimination had been violated, he raised the issue that he was in a catch-22 situation if he wanted a suspended sentence but did not want to admit guilt to the sexual acts.  Butler evidenced his misgivings about having to admit guilt before undergoing either a sexual offender evaluation or a sexual offender treatment program when he answered the District Court's questions as follows:

> Like I said, if it goes to a jury trial, I'm going to end up in prison for something I didn't do.  And if I plead guilty and go to this doctor and don't admit it to him, I **still** end up in prison for a year.

The issue of self-incrimination was central to Butler's discussion

with the District Court on December 10, 1992. We conclude that Butler sufficiently raised the issue of his Fifth Amendment right against self-incrimination, and, therefore, we review Butler's claim on its merits.

Butler argues that our holding in State v. Imlay (1991), 249 Mont. 82, 813 P.2d 979, controls the instant case. In Imlay, we held that in sex offense cases, we should "protect the defendant's constitutional right against self-incrimination, and . . prohibit augmenting a defendant's sentence because he refuses to confess to a crime or invokes his privilege against self-incrimination." Imlav, 813 P.2d at 985. Following a jury trial, defendant Imlay was convicted of sexual assault, a felony, and sentenced to five years in the Montana State Prison. Defendant was placed on formal probation for all but 35 days of the sentence on the condition that he enroll in a sexual therapy program. When the defendant enrolled in, and scheduled six consecutive appointments, but was unable to complete the program because he would not admit guilt of the crime he was convicted of, the district court revoked his suspended sentence. Imlav, 813 P.2d at 980-82.

In contrast, Butler did not go to trial and assert his Fifth Amendment right against self-incrimination but instead entered an Alford plea and admitted guilt in order to obtain favorable sentencing recommendations. A defendant waives certain constitutional rights by pleading guilty, including the right to trial and the right against compulsory self-incrimination. Boykin v. Alabama (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23

7

L.Ed.2d 274, 279. "In light of the importance of the rights waived, it is a well-settled legal principle that a guilty plea must be a voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant." State v. Radi (1991), 250 Mont. 155, 159, 818 P.2d 1203, 1206 (citing North Carolina v. Alford (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162). There was every indication that Butler voluntarily and knowingly chose among his alternative courses of action. The District Court and Butler's attorney discussed with Butler "that the prosecutor [was not] willing . . . to do anything less than sex offender treatment." The District Court further counseled Butler,

> [o]f course, you always have the Alford plea if you need to do that; but on these sexually-related charges, you've got sexual treatment -- that you never get out of sexual offender treatment unless you admit to the allegations ordinarily.

Sexual offender evaluation and treatment were conditions of the suspended sentence that Butler knew the State would not forego.

The State argues that the plea bargain agreement between Butler and the State was a contractual agreement. In State v. Owens (1992), 254 Mont. 224, 836 P.2d 595, we held that "[p]lea bargaining agreements are subject to contract law standards." Owens, 836 P.2d at 598 (quoting State v. Dinndorf (1983), 202 Mont. 308, 311, 658 P.2d 372, 373). We have held that we will not lend our assistance to a person accused of a crime in escaping the obligations of a plea bargain agreement after accepting its benefits. State v. Reynolds (1992), 253 Mont. 386, 392, 833 P.2d 153, 157.

In the instant case, Butler chose to plead guilty instead of going to trial and agreed to the conditions of his suspended sentence in return for the State recommending his suspended sentence. However, Butler failed to comply with the conditions and therefore did not fulfill his end of the bargain. Importantly, Butler not only failed to comply with the sexual offender conditions of the suspended sentence but he also violated seven other conditions.

Butler contends that the District Court revoked Butler's suspended sentence primarily because of Butler's failure to undergo sexual offender evaluation and treatment. In contrast, the State contends that seven of the nine violations of Butler's suspended sentence did not concern sexual offender treatment. We have held that "no violation of a probation agreement is minor." State v. Rogers (1989), 239 Mont. 327, 330, 779 P.2d 927, 929 (quoting Collins v. State (Wyo. 1986), 712 P.2d 368, 371). In Rogers, the sole issue on appeal was whether the district court abused its discretion when it revoked Rogers' suspended sentence and imposed a ten-year sentence of incarceration. Roaers, 779 P.2d at 928. We noted that a "district court's decision to revoke a suspended sentence cancels a prior act of grace and is within the court's discretion." Rogers, 779 P.2d at 929. Rogers argued that he had substantially complied with the terms and conditions of his probation and that his violations were merely technical. Rogers, 779 P.2d at 928. In Rogers, we held that the record clearly demonstrated, and that the defendant did not deny, that he violated

9

the conditions of his suspended sentence.  <u>Rogers</u>, 779 P.2d at 929.

Similarly, Butler admitted that he violated seven conditions of his suspended sentence.  Notwithstanding the sexual offender treatment violations, there was a sufficient basis to support the District Court's decision to revoke Butler's suspended sentence. In light of the record, the District Court did not abuse its discretion when it revoked Butler's suspended sentence.

Butler requested that we allow him to withdraw his **Alford** plea and proceed to trial as a remedy for the violation of his Fifth Amendment right against self-incrimination.  The State argues that Butler did not file a motion to withdraw his guilty plea in the District Court and is therefore precluded from doing so before this Court.  Without reaching the issue of whether such a motion must be "filed," i.e. in writing, we have, nevertheless, consistently held that a request to withdraw a guilty plea must be first raised in district court.  See Radi, 818 P.2d at 1206 ("Initially, the grant or denial of a motion to withdraw a guilty plea is within the sound discretion of the trial court"); State v. **Martz** (1988), 233 Mont. 136, 760 P.2d 65; Matter of Hardy (1980), 188 Mont. 506, 614 P.2d 528.

Moreover, subject to the exceptions of § 46-20-701(2), MCA, this Court will not entertain issues not raised before the trial court.  State v. Redfern (1987), 228 Mont. 311, 313, 741 P.2d 1339, 1340.  Thus, we need not discuss the merits of Butler's request to withdraw his guilty plea because the issue was not first raised before the District Court.

10

In summary, we hold that the District Court did not abuse its discretion in revoking Butler's suspended sentence.

AFFIRMED.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11