No. 02-356

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 3

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

JASON FLOYD AUNE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                     In and for the County of Big Horn,
                     The Honorable Blair Jones, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          James L. Vogel, Vogel Law Office, Hardin, Montana

      For Respondent:

          Mike McGrath, Montana Attorney General, Jim Wheelis, Assistant Montana
          Attorney General, Helena, Montana; Christine Cooke, Big Horn County
Attorney, Hardin, Montana

Submitted on Briefs:  November 21, 2002

Decided:  January 9, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      In 1996, Jason Aune (Aune) pled guilty in the Twenty-Second Judicial District Court to two counts of felony sexual assault and one count of criminal mischief, a misdemeanor. Aune was sentenced to two twenty-year terms at the Montana State Prison (MSP) and a six month jail term, with all time suspended. On July 17, 2001, the State filed a petition to revoke Aune's suspended sentence. Following hearings on the petition, the District Court revoked Aune's suspended sentence and sentenced him to MSP for a period of fifteen years, 259 days on each sexual assault count, with time running concurrently on each. Aune appeals from this order. We affirm.

¶2      The sole issue presented on appeal is whether the District Court erred when it found that Aune had violated the terms and conditions of his probation and revoked Aune's suspended sentence.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3      On August 29, 1995, Aune was charged in Big Horn County with two counts of felony sexual assault for fondling two three-year-old boys, and one count of criminal mischief, a misdemeanor, for damage caused during his attempt to elude law enforcement. Pursuant to a plea agreement, Aune pled guilty to all three charges on October 15, 1996. On December 23, 1996, following preparation of a presentence investigation, the District Court sentenced Aune to MSP for a term of twenty years on both counts of sexual assault and to the

2

County Jail for a term of six months for criminal mischief, with all three sentences to run concurrently. The District Court then suspended Aune's sentence entirely.

¶4 Included in the conditions of Aune's suspended sentence were the standard rules and regulations required by the Department of Adult Probation and Parole, as well as payment of various fees. In addition, the District Court included the following conditions:

> 2. The Defendant shall, in a timely manner to be determined by his supervising officer, complete a Sexual Offender Evaluation and follow through with any recommendations made therein to the satisfaction of his supervising officer.

> 3. Defendant shall have no contact with minor children unless approved by a Sex Offender Counselor or Treatment Team.

¶5 Directly following imposition of this suspended sentence, Aune was transported to North Dakota where he faced revocation of a three-year deferred sentence that he had received for convictions of burglary and criminal trespass in 1995. Apparently, Aune also faced a charge for issuing bad checks in North Dakota. The record is unclear as to the disposition of those matters.

¶6 In the Spring of 1997, Aune was transported back to Montana on a charge of issuing bad checks in Richland County. Following a plea of guilty, Aune was sentenced on May 6, 1997, by the Seventh Judicial District Court to eight years at MSP, with two years suspended. In addition to the standard rules and regulations of probation, the court imposed several conditions of suspension on Aune, including that Aune participate in sexual offender counseling on a regular basis if determined necessary by his parole/probation officer, and also that he have no contact with minor-aged children. The Seventh Judicial District Court

3

also ordered Aune to complete Phases I and II of the Sex Offender Treatment Program (SOTP) at MSP prior to being considered for parole. In ordering these conditions, the court noted that

> [a]s a condition of his sentence in Big Horn County, Montana, the Defendant was supposed to obtain sex offender treatment. He has not done so and will not have the opportunity to do so in the remainder of his time in custody in North Dakota. Rather than risk having a convicted sex offender slip through the cracks because of the numerous charges pending against this Defendant, the [c]ourt deems it appropriate to include the treatment as a part of this sentence, recognizing that this was not a crime of a sexual nature.

Aune did not challenge this conviction or sentence.

¶7     MSP received Aune on December 3, 1997, and while in the prison, Aune completed Phase I of SOTP, which focuses on education and usually takes about sixteen weeks to complete. Although Aune began Phase II of SOTP, he quit participating one month before he discharged to probation from MSP on August 13, 2000. During Phase II, which is the intensive treatment component of SOTP, offenders complete specific tasks addressing a wide-range of issues related to sexual offending and recovery, and then present those tasks during individual and group therapy sessions. Phase II generally takes at least two years to complete. Aune explained that he attended Phase II for thirteen or fourteen months, but complained that the other participants were not working on counseling issues during sessions. Aune felt the sessions were not helpful and he was getting depressed.

¶8     Upon leaving MSP, Aune sought to have his probation transferred to Williston, North Dakota, so he could reside with his parents and find work. Aune was initially denied supervision in North Dakota since there were no appropriate treatment programs in Williston,

4

and North Dakota's probation department would not accept Aune, who was a high risk to re-offend, without treatment. During the process of trying to transfer his probation to North Dakota, Aune applied for enrollment with the Sex Offender Treatment Program at the Badlands Human Service Center (Badlands) in Dickinson, North Dakota, which is 125 miles from Williston.

¶9 Aune completed a sex offender evaluation at Badlands, eventually being accepted into the program, and North Dakota assumed probationary supervision of Aune as of September, 2000. However, Aune's acceptance into Badlands was conditioned on an agreement that in addition to the requirements under the standard Badlands treatment contract, Aune would also abide by an addendum to the contract that was specifically designed for him. The addendum prohibited Aune from having contact with minors and from using the Internet, and required that Aune abide by a curfew, keep a daily log of activities, and notify his case manager of any changes in address/employment. Pertinent to this appeal, Aune was also required to abide by the following condition contained in the standard Badlands' treatment contract:

> All partners of clients who are involved in an ongoing marital, common law, or live-in relationship must agree to participate in treatment as recommended by a therapist or treatment team.

Aune signed both the contract and accompanying addendum, and began attending treatment sessions in November of 2000.

¶10 Initially, Aune lived in Dickinson, but later moved to Williston, commuting to Dickinson for his counseling sessions at Badlands. From November 2000 to June 2001,

Aune attended over ninety group or individual sessions, and in April of 2001, he got married. In June of 2001, Aune was terminated from the sex offender treatment program at Badlands. On July 17, 2001, the State of Montana filed a petition for revocation of Aune's 20-year suspended sentence for felony sexual assault. The petition to revoke was supported by an allegation that Aune failed to pay required court costs, had not participated in sexual offender counseling on a regular basis, citing his termination from Badlands, and that Aune had unauthorized contact with minors.

¶11 The District Court set a hearing on the petition for September 24, 2001, when it heard testimony from the following witnesses: Lois Merkle (Merkle), Aune's probation officer from North Dakota; Karen Goyne (Goyne), a counselor at Badlands; Cotton Secrest (Secrest), a probation officer in Big Horn County; Aune; and Aune's landlady, father, and brother.

¶12 Merkle testified that Aune was terminated from Badlands in June of 2001, for failing to follow contract and addendum rules, such as lying, violating curfew, and having contact with minors. According to Merkle, Aune admitted that he had lied to her and to his counselors at Badlands. Merkle also testified that two minor girls lived at a farm where Aune worked and explained that Aune was in contact with them in violation of the conditions of his probation and the contract-addendum with Badlands. Merkle told the court that Aune admitted to her that he had contact with minor children and that he knew they were under age eighteen. However, Merkle conceded that following an Interstate Compact Preliminary Hearing in Williston on July 9, 2001, where Merkle presented similar testimony, the hearing

6

officer found there was no probable cause to support the belief that Aune had contact with minors.

¶13     Goyne, a psychiatric nurse at Badlands who worked with Aune in her role as group facilitator with the sex offender program, explained that the principal reason Aune was terminated from the program was because of the dishonesty he displayed to the treatment team. Goyne agreed that physical presence at counseling sessions was a big part of treatment, but added that "more than attendance is their willingness to be honest and participate in the program, be an active member, share honestly, those kind of things." Goyne relayed to the court that Aune told her, "I lie for no reason," and told the court that she explained to Aune that if he wanted to remain in the program he would have to be honest and disclose any violations of his contract, which according to Goyne, Aune failed to do.

¶14     Goyne further testified that Aune's girlfriend/wife met with the program facilitators and agreed to attend four group sessions and possibly individual therapy. However, she failed to attend the scheduled sessions. Eventually, Aune was warned that if his wife refused to participate in some kind of treatment, Aune would risk being terminated from the program if he continued to live with her. According to Goyne, Aune's termination from Badlands was based in part on Aune deceiving the treatment staff when he told them he and his wife were living separately, when in fact he did not separate from her. In Goyne's opinion, Aune needed 24-hour supervision and added that for Aune to have any chance of not re-offending, Goyne felt he should be enrolled in a highly structured treatment setting.

¶15 Secrest, the probation officer who completed Aune's 1996 presentence investigation and worked on Aune's initial sign-up and transfer, explained that Aune had completed Phase I of SOTP while in MSP, but had quit Phase II. Secrest agreed that despite the Richland County condition requiring Aune complete Phases I and II of SOTP prior to parole consideration, Aune was released from MSP. However, Secrest explained that if completing both phases of SOTP would extend past the discharge date, MSP could not continue to hold Aune based on his failure to complete the treatment.

¶16 Michael Sullivan (Sullivan), another psychologist, also testified at the revocation hearing. Sullivan explained to the court that he had completed a psychosexual evaluation of Aune in December of 1996, after which he concluded Aune was a high-risk to re-offend. Prior to the 2001 revocation hearing, Sullivan re-assessed Aune using two risk assessment scales, and concluded that Aune still warranted a high-risk designation. According to Sullivan's evaluation, Aune was a "preferential introverted sexual offender." Sullivan explained that "preferential" means the offender has a primary sexual interest in children, while "introverted" indicates the offender's sexual offenses will generally be inflicted upon very young children whom he does not know.

¶17 Sullivan also explained that the success of a sexual offender's treatment depends heavily on the individual's motivation for change and willingness to engage in the treatment process, including rigorously following all treatment conditions. After briefly reviewing Aune's rehabilitative file from MSP, Sullivan opined that there were problems with Aune's motivation for treatment while in prison. In Sullivan's opinion, if an offender does not

8

complete Phase II of SOTP, it supports a continued high-risk designation. Sullivan added that there were no community-safe alternatives in Montana for Aune given his failure to complete outpatient treatment and Phase II of SOTP. According to Sullivan, when an offender has failed in a community-based program, it is generally appropriate to treat that person in a more secure structured setting, such as MSP, and require completion of Phase II of SOTP.

¶18     At the conclusion of the hearing, the District Court found that Aune had violated the terms of his probation and granted the State's petition for revocation. The court determined that Aune's sexual offender evaluation at MSP, which was completed pursuant to his Richland County sentence, satisfied the requirement from the Big Horn County suspended sentence that Aune obtain a sexual offender evaluation. However, the court found that the State proved by a preponderance of the evidence that Aune had not satisfactorily completed the recommended treatment, noting that Aune failed to complete Phase II of SOTP and was terminated from Badlands for failing to comply with the program's rules and regulations. The court also found by a preponderance of the evidence that Aune had had contact with minor children without the approval of a sex offender counselor or his treatment team. The court revoked Aune's suspended sentence and sentenced Aune to MSP for a term of fifteen years, 259 days for each sexual assault count with the sentences to run concurrently. Aune appeals from the District Court's dispositional order.

**STANDARD OF REVIEW**

9

¶19 We review a district court's determination to revoke a suspended sentence for an abuse of discretion and whether the court's decision was supported by a preponderance of the evidence in favor of the State. *State v. Averill*, 2001 MT 161, ¶ 22, 306 Mont. 106, ¶ 22, 30 P.3d 1059, ¶ 22 (citing *State v. Williams*, 1999 MT 240, ¶ 11, 296 Mont. 258, ¶ 11, 993 P.2d 1, ¶ 11). *See also*, *State v. Lundquist* (1992), 251 Mont. 329, 331, 825 P.2d 204, 206.

## DISCUSSION

¶20 **Did the District Court err when it found Aune had violated the terms and conditions of his probation and revoked his suspended sentence?**

¶21 Under § 46-18-203(6), MCA, the State must prove a violation of the terms and conditions of the suspended or deferred sentence by a preponderance of the evidence. *See*, *State v. Richardson*, 2000 MT 72, ¶ 10, 299 Mont. 102, ¶ 10, 997 P.2d 786, ¶ 10. Following a hearing pursuant to § 46-18-203, MCA, if a district court finds that a defendant violated the terms and conditions of a suspended or deferred sentence, the judge may:

> (i) continue the suspended or deferred sentence without a change in conditions;
> (ii) continue the suspended sentence with modified or additional terms and conditions;
> (iii) revoke the suspension of sentence and require the offender to serve either the sentence imposed or any lesser sentence; or
> (iv) if the sentence was deferred, impose any sentence that might have been originally imposed.

Section 46-18-203(7)(a), MCA. The standard for revocation of probation is whether the judge is reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty. *Averill*, ¶ 22 (citing *Lundquist*, 251 Mont. at 331, 825 P.2d at 206). *See also*, *Richardson*, ¶ 10 (citation omitted).

¶22     Aune first argues the District Court erred when it found that he violated the conditions of his Big Horn County suspended sentence when that finding was based in part on the conclusion that Aune failed to complete Phase II of SOTP. Aune notes that completing both Phases of SOTP was a requirement under his sentence from Richland County, not Big Horn County. We agree. The sentence originally imposed in Big Horn County did not carry with it the specific requirement that Aune complete Phases I and II of SOTP. Therefore, to the extent it was based on his failure to complete Phase II, the District Court's finding that Aune had failed to comply with the terms of his sentence was not supported by a preponderance of the evidence. However, this conclusion is not dispositive, for the District Court also found that Aune had violated the condition that he "follow through" on sexual offender treatment, based on his termination from Badlands. (See ¶ 4 herein)

¶23     Aune concedes that he was terminated from the Badlands Program. Moreover, Aune does not challenge that he was required to follow the recommendations of the Badlands evaluation to the satisfaction of his probation officer, Merkle. However, relying on *State v. Lundquist*, 251 Mont. 329, 825 P.2d 204, Aune argues that under the circumstances, the District Court erred in finding he violated his probation based on his termination from Badlands. In part, Aune contends that a significant reason for his termination from Badlands was his failure to separate from his wife and his ensuing dishonesty with the treatment team, and argues the District Court did not have the authority to order Aune to separate from his wife.

11

¶24 Contrary to Aune's assertion, the District Court did not order him to separate from his wife. When Aune signed the treatment contract and addendum, not only was he single, but more importantly, he agreed to abide by the documents' terms, including the provision requiring any relationship-partner to participate in therapy. Moreover, Goyne emphasized that the main reason for Aune's termination was his dishonesty about his separation, not so much the fact the couple did not separate. We therefore conclude the circumstances surrounding Aune's separation from his wife and his dishonesty to treatment staff were appropriately considered by the District Court. We now turn to Aune's reliance upon *Lundquist*.

¶25 In *Lundquist*, the defendant was convicted of sexual intercourse without consent and was sentenced to ten years, with all time suspended. As a condition of his probation, Lundquist was required to obtain a sexual offender evaluation at his own expense and complete counseling as recommended. Lundquist traveled 150 miles round trip to attend the recommended program, attending seventy-six group therapy sessions and thirteen individual sessions. During this time, Lundquist paid $2,450 in counseling fees. However, he was later terminated from the program because he failed to develop a payment schedule for his outstanding balance of $1,260, and his suspended sentence was eventually revoked by the district court. For a variety of reasons, we reversed, holding that the court abused its discretion in sentencing Lundquist to serve his original sentence. *Lundquist*, 251 Mont. at 331-33, 825 P.2d at 205-207.

¶26 Aune's reliance on *Lundquist* is misplaced. First, unlike Lundquist, Aune's termination from Badlands had nothing to do with his failure to make payments. Aune's termination was in large part due to his behavior towards the treatment team and counselors, specifically his dishonesty, curfew violations, and contact with minors. In *Lundquist*, the initial justification for termination was failure to make payments, which we concluded was unreasonable given Lundquist's financial circumstances. Conversely, requiring Aune to be forthright and honest in his therapy sessions during sex offender treatment was arguably a reasonable requirement. Moreover, Lundquist fully complied with his treatment program for at least eighteen months, while Aune began having problems well within a year of starting at Badlands.

¶27 Second, in *Lundquist*, we emphasized that Lundquist had been accused of violating only one condition of his probation. *Lundquist*, 251 Mont. at 333, 825 P.2d at 206-207. Here, in addition to failing to complete sex offender treatment, Aune also had unapproved contact with minors. Moreover, unlike Lundquist, who had no criminal history, Aune was answering to several other criminal charges throughout North Dakota and Montana. While arguably most of those offenses were not sexual in nature, Aune nonetheless had a history of criminal activity and given his high-risk designation, both Goyne and Sullivan recommended a secure, structured, inpatient treatment environment for Aune.

¶28 Finally, we disagree with Aune's contention that, because his attendance record was similar to Lundquist's, our decision in *Lundquist* must control here. We have repeatedly stated that

13

[t]he inquiry at any probation revocation hearing is whether the purposes of rehabilitation are being achieved, and whether, by virtue of subsequent criminal conduct or evidence that the defendant's behavior was not in compliance with the rules and objectives of his probation, the purposes of probation are best served by continued liberty or by incarceration.

*Williams*, ¶ 21 (citing *State v. Lindeman*, 285 Mont. 292, 308, 948 P.2d 221, 231). As Goyne and Sullivan explained, an offender's physical presence at counseling sessions does not necessarily equate to his compliance with the program requirements or the objectives of his probation. Rather, the pertinent inquiry is whether the offender is meeting all the goals of treatment. Here, in addition to Aune's own admissions, both Goyne and Merkle testified that Aune was dishonest to them and the treatment staff, which according to Goyne, was a critical aspect of any treatment program. Although Goyne testified that she gave Aune opportunities to disclose any prior dishonesty and be forthright--which may have allowed him to remain in the program--Aune did not take advantage of her suggestions.

¶29 We conclude that *Lundquist* is factually distinguishable from the facts presented here, and thus does not warrant reversal of the District Court's decision to revoke Aune's suspended sentence.

¶30 Aune next contends that in regards to the allegation that he had contact with minors, Merkle had no detailed knowledge of what the alleged "contact" was, and also argues that the preliminary hearing officer, reviewing the same evidence as presented to the District Court, found that probable cause was lacking for this allegation.

¶31 We have repeatedly stated that the weight of the evidence and the credibility of witnesses are exclusively in the domain of the district court. *State v. Jackson*, 2002 MT 212,

14

¶ 12, 311 Mont. 281, ¶ 12, 54 P.3d 990, ¶ 12 (citing *State v. Couture*, 1998 MT 137, ¶ 17, 289 Mont. 215, ¶ 17, 959 P.2d 948, ¶ 17). Thus, if conflicting evidence is presented, the district court is in the best position to make the necessary inferences and determine which evidence is more persuasive. *See*, *Jackson*, ¶ 12 (citation omitted).

¶32    Here, the District Court heard testimony from Merkle and Goyne concerning allegations of Aune's contact with minors, as well as Aune's own admissions. Aune told the court that when he had contact with children, other adults were present, and explained that he did not consider it a problem as long as he was standing next to another adult. However, Aune also conceded that he was dishonest about the presence of children to his treatment staff.

¶33    We conclude the District Court, being the sole judge of credibility of witnesses, had sufficient evidence before it to find, by a preponderance of the evidence, that Aune violated the condition that he was prohibited from having contact with minors. The standard for revoking a suspended sentence requires that the district court be reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty. *Averill*, ¶ 22. Moreover, this Court has held that "no violation of a probation agreement is minor," and has concluded that a district court did not abuse its discretion when it revoked a suspended sentence for violation of even one condition of probation. *Lindeman*, 285 Mont. at 306, 948 P.2d at 230 (citing *State v. Butler* (1995), 272 Mont. 286, 292, 900 P.2d 908, 911).

¶34    Therefore, we conclude the District Court did not err when it found Aune violated the condition he complete and "follow through" with sexual offender treatment based on his termination from Badlands.  Nor did the court err when it found Aune violated the condition that he not have unauthorized contact with minors.

¶35    While Aune argues the court erred in finding he violated the conditions of his probation as discussed above, he also appears to argue that the District Court abused its discretion when it revoked his suspended sentence based on those violations.  Aune contends that the evidence at the hearing indicated he was improving and had not re-offended, and that revocation and incarceration was therefore unnecessary to effect the goals of his probation.  We disagree.

¶36    There was ample testimony at the revocation hearing that Aune continued to be designated a high-risk to re-offend, he had quit participating in Phase II of SOTP well short of completion, he had failed to abide by the rules set forth in the Badlands' contract and addendum, he was dishonest with his treatment staff, and he had unauthorized contact with minors.  Sullivan explained that in his opinion Aune exhibited problems with motivation towards treatment while in MSP and suggested he be required to complete Phase II of SOTP.  According to both Goyne and Sullivan, Aune should be enrolled in a highly structured treatment setting.  Moreover, Aune had a lengthy criminal history.

¶37    We conclude that based on the record before us, the District Court did not abuse its discretion when it revoked Aune's suspended sentence and sentenced him to serve two concurrent terms of fifteen years, 259 days at MSP for each count of felony sexual assault.

16

Moreover, we note that Aune does not challenge the length of the sentence imposed by the District Court, nor does he challenge the court's imposition of the condition that he now complete Phase II of SOTP prior to being considered for parole.

¶38    Accordingly, the District Court's disposition and sentence is affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER

/S/ JIM RICE
/S/ JIM REGNIER